**Opinion filed December 30, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00022-CR

_____

## ALEXANDER JORDAN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 78th District Court**
**Wichita County, Texas**
**Trial Court Cause No. 47,296-B**

### M E M O R A N D U M   O P I N I O N

The jury convicted Alexander Jordan of aggravated assault. Upon a finding of "true" to a prior felony conviction alleged for enhancement purposes, the jury assessed his punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice. The jury also assessed a fine of $10,000. Appellant challenges his conviction and sentence in two issues relating to the admission of extraneous offenses. We affirm.

*Background Facts*

The victim testified that she was walking to her mother's house before 7:00 a.m. on April 21, 2007. Appellant pulled over in his car and offered her a ride, which she declined. After continuing her walk, appellant approached her again in his vehicle. At this time, he jumped out

of his car, put a gun to her head, and threatened to shoot her if she screamed. He then threw her into his car and transported her to the end of a dead-end street. Appellant then dragged her out of the car onto the side of the dead-end street and raped her as she attempted to fight him off her. The victim testified that, during the course of their struggle, appellant told her he was going to shoot her and that he subsequently shot her in her right leg above the knee. After appellant shot the victim, he returned to his car, fired another shot toward the victim that grazed her eye, and then sped away.

Appellant admitted in his testimony given during the guilt/innocence phase that he had an encounter with the victim. However, he offered a much different version of the encounter. He testified that he hired the victim as a prostitute after she "flagged him down" when he drove by a hotel that prostitutes frequent. He contends that the victim directed him to transport her to the dead-end-street location and that she subsequently performed oral sex on him based upon their previous negotiations. Appellant testified that, at some point while he and the victim were engaged in sexual activities inside his car, a man that appellant previously saw with the victim at the hotel opened the door of the car. Appellant testified that he and this man starting fighting outside the car. He further testified that the man had a gun in his hand and that the gun went off during the struggle, striking the victim in the leg.

*Evidence of Extraneous Offense*

Near the end of his direct testimony, appellant gave the following response in reply to his trial counsel's question asking him if he felt he was fighting for his life during the alleged altercation:

> I was. I was fighting for my life. My means is not to harm nobody. I wasn't trying to harm no [victim's name]. The thing was instead of her explaining to the cops what happened, saying that, Well, I picked up this john, we tried to rob him, and this happened to me, she had to make up some kind of story. So she decided to tell the people, 7:00 in the morning that I jumped out of my car and -- and -- and dragged her, which is ludicrous. Why would I do that?

> My face is on posters all over the city. I'm selling CDs.[1] Why would I wreck everything I worked so hard for to rob or rape a dope fiend, somebody that smoke crack and sell her body for drugs. Why would I do that? And I'm not degrading her. I'm not trying to talk down on her because I know she was harmed, but what if it was me that was killed? What if it was me that was hurt that day? It would just be another man dead. It would just be an unsolved murder.

---

[1]Appellant testified that he produced and recorded rap music CDs and promoted them in the Wichita Falls area.

The prosecutor relied on this response in subsequently asking the trial court for permission to present evidence about appellant's encounters with two other women, S.C. and M.F.[2] Specifically, the prosecutor sought to introduce evidence that on October 12, 2006, appellant engaged the services of S.C., a prostitute, at a local hotel. While driving to a remote area in Wichita Falls, appellant and S.C. negotiated for S.C. to perform oral sex on appellant in exchange for money. However, appellant allegedly began beating S.C. to the point that he anally raped her and then threw her out of his car. With regard to M.F., appellant allegedly met her at an acquaintance's house. He offered her a ride to a store to pick up some medicine, but instead of taking her to the store, he allegedly drove her to a motel room after which he pulled a gun on her and forced her to engage in sexual acts with him at gunpoint.

The prosecutor asserted that evidence of these extraneous acts was admissible to rebut appellant's defensive theory and to show intent, motive, and lack of mistake. Appellant objected to the admission of this evidence under TEX. R. EVID. 404(b) and 403. After conducting a hearing outside the presence of the jury, the trial court overruled appellant's objections. In doing so, the trial court stated that it was going to permit the evidence of extraneous acts to show intent, motive, and lack of mistake; to rebut the defensive theory; and to remove the false impression created by appellant in his testimony. Appellant challenges the trial court's rulings under Rules 404(b) and 403 in two issues.

*Analysis*

Rule 404(b) provides in relevant part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant for the purpose of proving that, on the occasion in question, the defendant acted in conformity with the character demonstrated by the other bad acts. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). However, evidence of extraneous offenses is not inadmissible if it is relevant to a fact of consequence apart from the tendency to show conduct in conformity with character. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). The

---

[2]Given the violent and degrading nature of the allegations, we are referring to the other two women by their initials.

exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Rule 404(b) is a rule of inclusion rather than exclusion. *Id.*

Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Id.* So, too, is a ruling on the balance between probative value and the counter factors set out in Rule 403, although that balance is always slanted toward admission, not exclusion, of otherwise relevant evidence. *Id.* A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard. *Id.* As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and the trial court's ruling will be upheld. *Id.* at 343-44. A trial court's ruling is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling. *Id.*

One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense. *Id.* at 343; *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). A party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *De La Paz*, 279 S.W.3d at 343; *Martin*, 173 S.W.3d at 466. But a mere denial of commission of an offense generally does not open the door to extraneous offenses because a defendant generally denies commission of the offense at trial. *De La Paz*, 279 S.W.3d at 343.

Appellant's contentions that the victim "had to make up some kind of story" and that he would not have engaged in the alleged conduct based upon his nature and status in the recording community are analogous to those made by the defendant in *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). Bass was a pastor accused of sexually assaulting a teenager on church property. *Id.* at 557. In his opening statement, he claimed the teenager's allegations were "pure fantasy" and "pure fabrication." *Id.* He further claimed during his opening statement that these

allegations were "contrary to [his] character" and "not worthy of belief" because "[a]s a pastor and minister," he was "the real deal and the genuine article." *Id.* at 557-58. After the teenager testified, the trial court permitted the State to present the extraneous offense evidence during its case-in-chief, which showed that appellant had sexually assaulted two other girls in his church office. The Texas Court of Criminal Appeals held that it was "at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the noncharacter-conformity purpose of rebutting appellant's defensive theory that the complainant fabricated her allegations against him and of rebutting the defensive theory clearly suggesting that appellant, as a 'real deal' and 'genuine' pastor, would not engage in the type of conduct alleged in the indictment." *Id.* at 563; s*ee De La Paz*, 279 S.W.3d at 345.

The recent holdings in *Bass* and *De La Paz* establish that extraneous offense evidence can be admissible to rebut the defensive theory of fabrication. *De La Paz*, 279 S.W.3d at 350; *Bass*, 270 S.W.3d at 563. *Bass* additionally stands for the proposition that extraneous offense evidence can be admissible to rebut a false impression created by the accused regarding his good nature or character. The evidence pertaining to appellant's conduct with S.C. and M.F. had logical relevance apart from character conformity because it showed that the victim's allegations were less likely to be fabricated and it rebutted appellant's statements that he would not have engaged in the alleged conduct. Accordingly, the trial court did not abuse its discretion in overruling appellant's objection to the extraneous offense evidence under Rule 404(b). Appellant's first issue is overruled.

With respect to appellant's second issue, a Rule 403 balancing test includes the following factors: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable – a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *De La Paz*, 279 S.W.3d at 348-49.

There is a presumption that evidence which is deemed to be relevant is admissible. *See Casey*, 215 S.W.3d at 879. The extraneous offenses occurred relatively close in time to the alleged offense, and they involve highly unusual events that are unlikely to repeat themselves inadvertently or by happenstance.[3] They also served a dual purpose of rebutting appellant's allegation that the victim was fabricating the allegations and his statements that he would not have engaged in this conduct based upon his good character. Furthermore, the prosecutor did not seek to offer the extraneous offense evidence until after appellant testified during the guilt/innocence phase. When all of the factors of the balancing test are viewed *in toto*, we find no abuse of discretion by the trial court in determining that the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Appellant's second issue is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


December 30, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

---

[3]See *De La Paz*, 279 S.W.3d at 347 for a discussion of the "doctrine of chances."

6